United States Courts
Southern District of Texas
FILED

MAY 16 2019

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § v. § § CRIMINAL NO. H-18-172SS § BILAL SALEH AWAD, § HIBA WAFIC ATAYA, § MARIO ISRAEL RIVAS-OCAMPO, § a/k/a Marco Gutierres-Salgero, § a/k/a Marvin Mejia, § Defendants. § | |

## SECOND SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

### COUNT ONE

### (CONSPIRACY TO TRANSPORT STOLEN PROPERTY IN INTERSTATE COMMERCE) 18 U.S.C. § 371

### A. INTRODUCTION

1. BILAL SALEH AWAD is a "fence" in the Houston area that receives stolen merchandise from "boosters" as part of an organized retail crime organization.

2. A "booster" is an individual that travels the United States stealing specific over-the-counter (OTC) merchandise from retail stores. A booster often re-sells the stolen merchandise to a fence.

3. A "fence" is a person who buys the stolen goods and merchandise from boosters at a fraction of their retail value in order to re-sell the stolen goods for profit. The fence re-sells the stolen goods and merchandise to third parties.

4. "OTC merchandise" is medicine that does not require a prescription and also includes non-prescription personal hygiene products that can be readily sold in a secondary market. OTC includes but is not limited to Nexium, Mucinex, Claritin, diabetic testing supplies, shaving razors and toothbrush heads.

5. AWAD receives stolen merchandise at Cube Smart, 7001 Synott Road, #226, Houston, Texas 77083. Since at least July 2015, Unit #226 was rented in the name of Malina Ana Vulpe, an alias used by AWAD to receive stolen OTC.

6. AWAD is the Director and President of Aviv Wholesale, Inc., which has a registered address in Houston, Texas.

7. AWAD owns a home located at 7714 Miller Glen Lane, Houston, Texas, where he sorts, stores, cleans, and prepares stolen OTC merchandise for shipment.

8. MARIO ISRAEL RIVAS-OCAMPO is a citizen of Honduras and is in the United States illegally. RIVAS is a "booster crew leader" in AWAD's criminal organization.

## B. THE CONSPIRACY AND ITS OBJECTS

Beginning in or around May 2015, the exact date of which is unknown to the Grand Jury, through on or about March 5, 2018, in the Houston Division of the Southern District of Texas and elsewhere, the Defendants,

**BILAL SALEH AWAD and**
**MARIO ISRAEL RIVAS-OCAMPO,**

did knowingly combine, conspire, confederate and agree, with others known and unknown to the Grand Jury, to commit the following offenses against the United States, that is:

(a) transport and cause to be transported in interstate commerce stolen goods, wares, and merchandise having a value of $5,000 or more, knowing and believing that the goods, wares, and merchandise had been stolen, in violation of Title 18, United States Code, Sections 2314 and 21; and

(b) receive, possess, conceal, store, sell and dispose goods, wares and merchandise having a value of $5,000 or more, which had crossed a State or United States boundary after being stolen, unlawfully converted or taken, knowing the same to have been stolen, unlawfully converted or taken, in violation of Title 18, United States Code, Sections 2315.

## C. MANNER AND MEANS

The manner and means by which the conspiracy, of which the defendant was a member, was sought to be accomplished included, among others, the following:

Acquisition of Stolen Merchandise by Boosters and Fences

9. It was part of the plan and purpose of the conspiracy that one or more of the conspirators/boosters would travel to pharmacies and retail stores both in Texas and in other states for the purpose of stealing over-the-counter (OTC) medicine and hygiene products.

10. It was part of the plan and purpose of the conspiracy that boosters would be advanced money by the fence to cover expenses incurred while traveling to steal OTC medicine and hygiene products from retailers.

11. It was part of the plan and purpose of the conspiracy that conspirators would use aluminum foil lined bags or purses to prevent detection of the stolen OTC merchandise by loss prevention devices when they left the store.

12. It was part of the plan and purpose of the conspiracy that the fence would wire money to boosters while they were out of state to cover any additional travel expenses or allow them to extend their trips to continue stealing OTC.

13. It was part of the plan and purpose of the conspiracy that boosters would place the stolen OTC in a box for shipping, along with an inventory list of the box's contents.

14. It was part of the plan and purpose of the conspiracy that boosters, at the fence's direction, would ship stolen OTC, across state lines, back to Houston, Texas, often using aliases as the shipper and addressee.

3

15. It was part of the plan and purpose of the conspiracy that the fence would pay the boosters for the stolen OTC.

Sale, Transfer, and Transportation of Stolen Merchandise from Fence to Wholesaler

16. It was a further part of the plan and purpose of the conspiracy that the fence would remove the retailer security stickers, prices and tags from the stolen merchandise to conceal the fact that these products had been stolen.

17. It was a further part of the plan and purpose of the conspiracy that the fence would sell the "cleaned" stolen OTC to out-of-state wholesalers.

18. It was a further part of the plan and purpose of the conspiracy that the fence would utilize interstate commercial shipping companies to deliver stolen OTC to the out-of-state wholesalers.

Payment for the Stolen Merchandise

19. It was a further part of the plan and purpose of the conspiracy that out-of-state wholesalers and purchasers of the stolen OTC would wire funds into accounts controlled by the fence.

## D. OVERT ACTS

In furtherance of the conspiracy described herein, one or more of the co-conspirators committed, in the Southern District of Texas and elsewhere, one or more of the following overt acts:

20. On or about February 13, 2015, RIVAS and an unindicted co-conspirator stole OTC from a Target store in Pflugerville, Texas.

21. On or about May 14, 2015, RIVAS and an unindicted co-conspirator stole OTC from several CVS stores in and around Austin, Texas.

22. On or about October 9, 2015, RIVAS stole OTC from a CVS store in Omaha, Nebraska.

23. On or about January 21, 2016, AWAD met with a Confidential Source (CS) and hired the CS to act as a booster of OTC, paying the CS $3,000 for travel expenses.

24. On or about January 21, 2016, AWAD instructed the CS to text him the tracking number once the OTC was shipped and to ship the stolen OTC to Malina Ana Vulpe, 7001 Synott Road, #226, Houston, Texas 77083.

25. On or about February 3, 2016, under the direction and control of federal law enforcement agents, a controlled shipment of two boxes of purportedly stolen OTC, valued at approximately $26,752, was sent from a FedEx store in Hoover, Alabama. Anti-theft stickers were placed on the OTC, and an inventory list was placed in the box before shipment, as previously instructed by AWAD. The CS shipped the purportedly stolen OTC to Malina Ana Vulpe, at 7001 Synott Road, #226, Houston, Texas 77083, as previously instructed by AWAD. The CS texted AWAD the tracking number, and AWAD acknowledged receipt of the tracking number.

26. On or about February 8, 2016, AWAD met the CS in Houston, Texas to pay the CS $3,800 for the shipment of purportedly stolen product, which had been shipped on February 3, 2016 from Hoover, Alabama. AWAD also paid the CS $5,500 for future travel expenses.

27. On or about February 18, 2016, under the direction and control of federal law enforcement agents, a controlled shipment of two boxes of purportedly stolen OTC, valued at approximately $37,508, was sent from a FedEx store in Birmingham, Alabama. Anti-theft stickers were placed on the OTC, and an inventory list was placed in the box before shipment, as previously instructed by AWAD. The CS shipped the purportedly stolen OTC to Malina Ana Vulpe, at 7001

Synott Road, #226, Houston, Texas 77083, as previously instructed by AWAD. The CS texted AWAD the tracking number, and AWAD acknowledged receipt of the tracking number.

28. On or about February 23, 2016, AWAD met the CS in Houston, Texas to pay the CS $2,700 for the shipment of purportedly stolen OTC, which had been shipped on February 18, 2016 from Birmingham, Alabama. AWAD also paid the CS $8,000 for future travel expenses.

29. On or about March 11, 2016, RIVAS and an unindicted co-conspirator stole OTC from a CVS store in and around Omaha, Nebraska.

30. On or about March 16, 2016, under the direction and control of federal law enforcement agents, a controlled shipment of three boxes of purportedly stolen OTC, valued at approximately $65,196, was sent from a FedEx store in Shreveport, Louisiana. Anti-theft stickers were placed on the OTC, and an inventory list was placed in the box before shipment, as previously instructed by AWAD. The CS shipped the purportedly stolen OTC to Malina Ana Vulpe, at 7001 Synott Road, #226, Houston, Texas 77083, as previously instructed by AWAD. The CS texted AWAD the tracking number.

31. On or about March 18, 2016, the packages shipped from Shreveport, Louisiana by the CS arrived at Cube Smart, 7001 Synott Road, Houston, Texas. Cube Smart personnel delivered the boxes to Unit #226. At approximately 3:25 p.m., AWAD arrived at the Cube Smart and retrieved the boxes from Unit #226.

32. On or about March 21, 2016, AWAD left his residence at 7714 Miller Glen Lane and shipped the purportedly stolen OTC from Parcel Plus, located at 14432 Bellaire Blvd., Houston, Texas, to Montaj, Inc., 3520 Hargale Road #200, Oceanside, New York. The purportedly stolen OTC arrived to Oceanside, New York on March 24, 2016.

33. On or about March 22, 2016, AWAD met the CS in Houston, Texas to pay the CS $5,100 for the shipment of purportedly stolen OTC, which had been shipped on March 16, 2016 from Shreveport, Louisiana. AWAD also paid the CS $11,000 as pre-payment for future shipments and for future travel expenses.

34. On or about April 25, 2016, AWAD wired the CS $750 through MoneyGram for additional expenses while AWAD believed the CS was traveling out of state to steal OTC.

35. On or about April 26, 2016, AWAD wired the CS $750 through MoneyGram for additional expenses while AWAD believed the CS was traveling out of state to steal OTC.

36. On or about April 28, 2016, under the direction and control of federal law enforcement agents, a controlled shipment of three boxes of purportedly stolen OTC, valued at approximately $52,777, was sent from a FedEx store in Pembroke Pines, Florida. Anti-theft stickers were placed on the OTC, and an inventory list was placed in the box before shipment, as previously instructed by AWAD. The CS shipped the purportedly stolen OTC to Malina Ana Vulpe, at 7001 Synott Road, #226, Houston, Texas 77083, as previously instructed by AWAD. The CS texted AWAD the tracking number, and AWAD acknowledged receipt of the tracking number.

37. On or about June 1, 2016, AWAD met the CS in Houston, Texas to pay the CS $15,000 as pre-payment for future shipments and for travel expenses.

38. On or about June 6, 2016, AWAD met the CS in Houston, Texas to pay the CS $15,000 as pre-payment for future shipments and for travel expenses.

39. On or about June 8, 2016, AWAD met the CS in Houston, Texas to pay the CS $5,000 as pre-payment for future shipments and for travel expenses.

40. On or about August 3, 2016, under the direction and control of federal law enforcement agents, a controlled shipment of four boxes of purportedly stolen OTC, valued at approximately $87,144, was sent from a FedEx store in Hollywood, Florida. Anti-theft stickers were placed on the OTC, and an inventory list was placed in the box before shipment, as previously instructed by AWAD. The CS shipped the purportedly stolen OTC to Malina Ana Vulpe, at 7001 Synott Road, #226, Houston, Texas 77083, as previously instructed by AWAD. The CS texted AWAD the tracking number.

41. On or about August 8, 2016, AWAD confirmed with the CS that he received the shipment from Hollywood, Florida.

42. On or about September 6, 2016, AWAD wired the CS $800 through MoneyGram for additional expenses while AWAD believed the CS was traveling out of state to steal OTC.

43. On or about September 8, 2016, AWAD wired the CS $800 through MoneyGram for additional expenses while AWAD believed the CS was traveling out of state to steal OTC.

44. On or about September 23, 2016, under the direction and control of federal law enforcement agents, a controlled shipment of three boxes of purportedly stolen OTC, valued at approximately $53,187, was sent from a FedEx store in Hollywood, Florida. Anti-theft stickers were placed on the OTC, and an inventory list was placed in the box before shipment, as previously instructed by AWAD. Agents shipped the purportedly stolen OTC to Malina Ana Vulpe, at 7001 Synott Road, #226, Houston, Texas 77083, as previously instructed by AWAD.

45. On or about January 16, 2017, Gina CORTEZ, a co-conspirator, and an unindicted co-conspirator stole OTC from a CVS store in Fort Myers, Florida.

46. On or about January 17, 2017, CORTEZ and an unindicted co-conspirator stole OTC from CVS stores in and around Fort Myers, Florida.

47. On or about April 28, 2017, RIVAS and an unindicted co-conspirator stole OTC from a Walmart store in and around Van Buren, Arkansas. They were arrested following a traffic stop with stolen OTC.

48. From October 2017 through February 2018, AWAD was observed arriving at Cube Smart, 7001 Synott Road, #226, Houston, Texas, to retrieve boxes sent to that address on multiple occasions. AWAD was then observed taking those boxes to his residence at 7714 Miller Glen Lane, in Houston, Texas.

49. On or about January 23, 2018, RIVAS was arrested, and he had on his person a business card, on the back of which contained the handwritten information "Malina Ana Vulpe, Cube Smart, 7001 Synott Rd. #226, Hou, Texas 77083."

50. Between February 1, 2018 and February 22, 2018, Gina CORTEZ, utilizing the alias Maria Ortiz, shipped twelve packages addressed to Malina Ann Vulpe, at 7001 Synott Road, #226, Houston, Texas 77083, containing stolen OTC.

51. On or about February 22, 2018, CORTEZ, utilizing the alias Maria Ortiz, shipped two packages addressed to Malina Ann Vulpe, at 7001 Synott Road, #226, Houston, Texas 77083, containing approximately $6,785 worth of stolen OTC, including Nexium, Mucinex, and Poise pads.

52. On or about February 28, 2018, AWAD possessed at his residence, 7714 Miller Glen Lane, in Houston, Texas, approximately $333 worth of stolen OTC, including Nexium, nasal strips, mucus relief medication, and Crest white strips.

53. On or about February 28, 2018, AWAD possessed at his residence, 7714 Miller Glen Lane, in Houston, Texas, tools and instruments commonly used to remove security labels

from stolen merchandise from the stolen OTC, including lighter fluid, razor blades, and cotton pads.

54. On or about February 28, 2018, AWAD possessed at his residence, 7714 Miller Glen Lane, in Houston, Texas, Walgreens and CVS anti-theft stickers and security labels that had been removed from OTC.

55. On or about February 28, 2018, AWAD possessed at his residence, 7714 Miller Glen Lane, in Houston, Texas, shipping labels sent from out of state from Maria Ortiz, addressed to Malina Ann Vulpe, at 7001 Synott Road, #226, Houston, Texas 77083.

56. On or about March 1, 2018, agents searched two packages addressed to Malina Ann Vulpe, at 7001 Synott Road, #226, Houston, Texas 77083, shipped by Maria Ortiz from Broken Arrow, Oklahoma, containing approximately $6,785 worth of stolen OTC, including Nexium, Mucinex, and Poise pads.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH SEVEN

### (INTERSTATE TRANSPORTATION OF STOLEN PROPERTY)
### 18 U.S.C. §§ 2314 and 21

On or about the dates set forth below, in the Southern District of Texas, and elsewhere, the defendant,

**BILAL SALEH AWAD,**

did transport and cause to be transported goods, wares, and merchandise with a value of $5,000 or more in interstate commerce, knowing and believing the same to have been stolen, converted, and taken by fraud at the time they crossed state lines and intending to deprive the owner of the use of the property as described in the counts below:

| Count | Shipment Date | Description of Interstate Shipment |
|---|---|---|
| 2 | February 3, 2016 | Shipment of purportedly stolen over-the-counter merchandise worth $5,000 or more from Hoover, Alabama to Texas |
| 3 | February 18, 2016 | Shipment of purportedly stolen over-the-counter merchandise worth $5,000 or more from Birmingham, Alabama to Texas |
| 4 | March 16, 2016 | Shipment of purportedly stolen over-the-counter merchandise worth $5,000 or more from Shreveport, Louisiana to Texas |
| 5 | April 28, 2016 | Shipment of purportedly stolen over-the-counter merchandise worth $5,000 or more from Pembroke Pines, Florida to Texas |
| 6 | August 3, 2016 | Shipment of purportedly stolen over-the-counter merchandise worth $5,000 or more from Hollywood, Florida to Texas |
| 7 | September 23, 2016 | Shipment of purportedly stolen over-the-counter merchandise worth $5,000 or more from Hollywood, Florida to Texas |

All in violation of Title 18, United States Code, Sections 2314 and 21.

## COUNT EIGHT

### (INTERSTATE TRANSPORTATION OF STOLEN PROPERTY)
### 18 U.S.C. § 2314

On or about February 22, 2018, in the Southern District of Texas, and elsewhere, the defendant,

**BILAL SALEH AWAD,**

did transport and cause to be transported goods, wares, and merchandise with a value of $5,000 or more in interstate commerce, knowing the same to have been stolen, converted, and taken by fraud at the time they crossed state lines and intending to deprive the owner of the use of the property.

All in violation of Title 18, United States Code, Section 2314.

## COUNT NINE

### (TAMPERING WITH EVIDENCE)
### 18 U.S.C. § 1519

On or about February 28, 2018, in the Southern District of Texas, and elsewhere, the defendant,

**HIBA WAFIC ATAYA,**

did knowingly alter, destroy, and mutilate, a record, document and tangible object with the intent to impede, obstruct, and influence the investigation of Bilal Saleh Awad, a matter within the jurisdiction of Homeland Security Investigations, a department and agency of the United States.

In violation of Title 18, United States Code, Section 1519.

### NOTICE OF FORFEITURE
### (18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice to Defendant,

**BILAL SALEH AWAD (Counts 1-8)**

that in the event of conviction of the any of the offenses charged in Counts One through Eight of this Indictment, all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, is subject to forfeiture.

### Property Subject to Forfeiture

Defendant is further notified that the property subject to forfeiture includes, but is not limited to:

(a) over-the-counter medication and health and hygiene products seized from Cube Smart, 7001 Synott Road, #226, Houston, Texas and 7714 Miller Glen Lane, Houston, Texas on or about February 28, 2018;

(b) real property located at 7714 Miller Glen Lane, in Houston, Texas, which is legally described as follows:

> LOT(S) 23, IN BLOCK 8, OF BRAEWOOD GLEN, SECTION 4, AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 239, PAGE 82, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

The record titleholder is Defendant BILAL AWAD.

(c) real property located at 7622 Miller Glen Lane, in Houston, Texas, which is legally described as follows:

> LOT(S) 19, IN BLOCK 8 OF BRAEWOOD GLEN, SECTION 4, A SUBDIVISION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 239, PAGE 82 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

The record titleholder is Defendant BILAL AWAD.

(d) $460,855.70 in funds seized on or about February 15, 2019 from Frost Bank account number ending in x40697.

## MONEY JUDGMENT AND SUBSTITUTE ASSETS

The United States may seek the imposition of a money judgment against each Defendant. Defendant is notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the Defendant up to the total value of the property subject to forfeiture.

A TRUE BILL:

Original Signature on File
_____
FOREPERSON OF THE GRAND JURY
( Deputy )

RYAN K. PATRICK
UNITED STATES ATTORNEY

BY: _____
Heather Winter
Assistant United States Attorney

BY: _____
Richard D. Hanes
Assistant United States Attorney